DON BAXTER, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 32094, 39210, 39211.    Filed February 28, 1958.

*A. Calder Mackay, Esq.*, and *Adam Y. Bennion, Esq.*, for the petitioner.

*R. E. Maiden, Jr., Esq.*, for the respondent.

**OPINION.**

MURDOCK, *Judge:* The Commissioner not only concedes that the petitioner qualifies for relief under section 722 (b) (4) and that the push-back rule applies but has allowed the petitioner some of the relief claimed by computing constructive average base period net income and a larger resulting credit than the petitioner would receive without the benefit of section 722. The Commissioner makes no argument that the applications for relief filed by the petitioner were not broad enough to cover the various contentions made in this case.

The notices of partial allowances and partial disallowances do not disclose just what caused the Commissioner to grant some relief or what his computations were leading to that relief. However, his counsel has made statements from which the information in the rest of this paragraph is gleaned. The Commissioner recognized that the new plant, occupied in June 1938, gave the petitioner increased capacity for production and changed the method of production from an all-hand to an all-machine method, but concluded that there was no proof that capacity was a sales-limiting factor during the base period and granted no relief on that basis. He considered the petitioner's claim of expansion of its sales territory to include some countries to the south of the United States but, since there was no evidence of the petitioner's ability to develop a profitable market in those countries during the base period, he did not take that factor into account in reconstructing base period earnings. He was convinced that the machine processes installed in the new plant eliminated some of the causes of defective solutions and improved the stability of

the solutions "as was true to an even lesser extent by reason of the coated stopper" and that the petitioner would have had some additional sales on account of the improved stability of its product. He took those sales into account in constructing the average base period net income upon which he allowed the relief.

The petitioner contends that the relief granted by the Commissioner is inadequate since it is entitled to a much larger credit. It asked for a finding as follows:

49. If petitioner had completed the development of its stopper coating in 1937 instead of 1939, if petitioner had introduced and commenced selling blood containers in 1937 instead of 1939, if petitioner had created the position of medical director and filled it in December, 1937, instead of December, 1939, if petitioner had completed its new plant and occupied it in June, 1936, instead of June, 1938, if petitioner had created the position of advertising manager and filled such position in April, 1935, instead of April, 1937, if petitioner had acquired additional foreign sales territory by amended contract of December 31, 1936, instead of December 31, 1938, and if petitioner had expanded its sales force by the end of 1937 to the extent that it was expanded by the end of 1939, petitioner would have attained a level of net sales of at least the sum of $600,000 by the end of its base period, or November 30, 1940, of which $500,000 net sales would have resulted from domestic business and $100,000 net sales from foreign business. Such a level of net sales would have resulted without taking into account or giving any effect to any events or conditions occurring or existing after December 31, 1939. [R. 886–891, Ex. 74.] Based upon the foregoing assumptions, and with the additional assumption that petitioner had commenced business in 1928 instead of 1930, petitioner would have attained a level of net sales by the end of its base period of $650,000. [R. 887–888.]

The following summary is from its opening brief:

Thus, the crowded conditions in the old plant, its inadequate design as a place to manufacture intravenous solutions, the designing and construction of a modern, efficient plant, are all tied together with the efforts petitioner was making to the end that the principal limitations upon the acceptance of its product might be effectively overcome. The Record establishes that until these problems were overcome petitioner's selling efforts were necessarily hampered, and indeed were limited.

The petitioner was not only well established but, coupled with its licensee, it occupied a dominant position in the industry at the beginning of the base period, and its request for a finding that it commenced business either during or immediately prior to the base period has been denied because it is without merit.

The petitioner claims that its transfuso-vac was a new product which it introduced in the base period and the base period earnings do not reflect the earnings normally to be expected from that product. It is not necessary to decide whether the introduction of this product during the base period might otherwise be a qualifying factor under section 722 (b) (4) since the evidence does not show that the petitioner's base period net income was an inadequate standard of

normal earnings because of the introduction of that product in the latter part of the base period. The evidence does not show what additional earnings might reasonably have been expected from the earlier introduction of that product, and without such evidence the matter merits no further discussion. Events occurring after December 31, 1939, cannot be considered in this latter connection.

The old plant was a poor one, inferior in many ways to the new plant, but the petitioner was obtaining its share of the existing market and the evidence does not justify a finding that its sales were limited because it could not produce in the old plant as much product as it could sell. The record does not show that an earlier appointment of an advertising manager and a medical director, or the earlier expansion of its sales force, alone, would have had any substantial effect upon earnings during the base period. The petitioner had begun to investigate foreign markets, but what it did in that respect during the base period has no effect upon the computation of CABPNI under section 722.

The principal argument of the petitioner is based upon the elimination of precipitation in the solutions which it sold for intravenous injections. It claims that precipitation was finally eliminated from those solutions in August 1939 and, assuming that this result had been accomplished 2 years earlier, its sales and profits at the close of the base period would have been much greater than the Commissioner determined in his computation of CABPNI. It says:

The perfection of the product was a logical first step before the expansion of the sales department and the expansion into new markets which were contemplated and which actually resulted after the product was perfected.

The petitioner was trying to the best of its ability during the base period to overcome precipitation which occurred to some extent in its product. The elimination of precipitation was highly desirable and undoubtedly tended to improve the product. However, the competitors of the petitioner were plagued with the same or a related similar problem. There was resistance by some physicians to the use of intravenous solutions because of precipitation in those solutions. However, this resistance affected the entire industry and, as previously stated, the petitioner was obtaining its share of the existing market and its losses due to precipitation were small. The petitioner, no doubt, had to keep trying to eliminate precipitation for fear that the solution of this problem by competitors would adversely affect its sales.

The Commissioner apparently based the partial relief which he allowed primarily upon the elimination by the petitioner of precipitation in its product. The record shows that it was not the policy of the petitioner to advertise or call the attention of customers to the fact

that precipitation in its product had been eliminated. Furthermore, the petitioner has not demonstrated that its elimination of precipitation in its product in 1939 gave it a valuable selling advantage over its competitors. Its licensee did not eliminate precipitation until 1941. The record falls far short of justifying a finding that the petitioner's sales during the base period would have reached the figures contended for by it had the gradual solution of this problem of precipitation, which was taking place during the base period, been pushed back 2 years. It is not at all clear that the petitioner would have captured any very substantially larger portion of the market if its elimination of precipitation had occurred 2 years earlier. However, had it solved the precipitation problem 2 years sooner, it would have had that much additional time and opportunity to increase its market. The record as a whole justifies the allowance of a constructive base period net income of $110,000.

The petitioner filed claims for relief under section 721 (a) (2) (C), the Commissioner denied those claims and the petitioner, in the petitions, assigns as error the Commissioner's failure to allow relief under that section for the years 1942 through 1945. The record contains evidence relating to this subject, the parties filed requests for findings of fact with respect to it, and the petitioner indicated that it was claiming relief under section 721 (a) (2) (C) in the alternative if it did not receive adequate relief under section 722. However, the petitioner's briefs contain no argument on the subject. The Court concludes, from the fact that the petitioner is no longer arguing the point, that the contentions made in the petitions with respect to section 721 (a) (2) (C) have been abandoned. Consequently, no findings of fact have been made and, even if the petitioner has not abandoned these contentions, they are decided against it for failure properly to prosecute.

Reviewed by the Special Division.

*Decisions will be entered under Rule 50.*